OPINION
{¶ 1} Defendant-appellant, Cecil Kelly, appeals his conviction in the Clermont County Court of Common Pleas for receiving stolen property. We affirm the decision of the trial court.
 {¶ 2} On October 29, 2003, appellant was indicted for receiving stolen property, specifically a skid steer or "Bobcat" vehicle valued between $27,000 and $32,000, a fourth-degree felony. Appellant worked as a project superintendent on a construction project in Athens County, Ohio. He oversaw the work performed by contractors on the project. The general contractor on the job was RWS Building Company ("RSW"). Ron Webster was the project superintendent for RWS. There was some work difficulties between appellant and Webster regarding RWS's performance.
 {¶ 3} In August 2003, Webster discovered a skid steer was missing from the worksite. Webster informed his RWS supervisor and the owners of the company of the missing equipment. Kelly was notified as were the personnel on the site. Efforts were made to find the skid steer. Webster ultimately reported an apparent theft of the skid steer to the Athens County Sheriff's Office.
 {¶ 4} On October 5, 2003, Michelle Kelly, appellant's estranged wife, became upset with appellant upon discovering his involvement in an affair with another woman. She reported to the Union Township Police Officer that a possible stolen skid steer was in her backyard. Officer Chad Bullock investigated the matter and discovered that the skid steer's serial number matched the reported missing skid steer from Athens County. The skid steer was towed to the police station.
 {¶ 5} Appellant went to the police station on October 6, 2003, and discussed with Det. Gaviglia that he had been loaned the skid steer and had meant to return it but had difficulty doing so because he had become sick. The following day, Officer Bullock called Kelly to the station, Mirandized him, and took a written statement in which appellant stated that he had permission to use the skid steer and planned to return it. Appellant also explained that he knew the skid steer had been reported stolen.
 {¶ 6} A bench trial was held on May 12 and 13, 2004. On October 6, 2004, the trial court rendered its decision in which it found appellant guilty of the charged offense.
 {¶ 7} Appellant now appeals raising six assignments of error.
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "THE TRIAL COURT VIOLATED THE APPELLANT'S CONSTITUTIONAL RIGHTS PURSUANT TO THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES' [sic] CONSTITUTION AND SECTION10 ARTICLE I OF THE OHIO CONSTITUTION TO A SPEEDY TRIAL BY FAILING TO RENDER A DECISION ON GUILT FOR NEARLY FIVE MONTHS AFTER HEARING THE EVIDENCE."
 {¶ 10} In the first assignment of error, appellant argues that the near year spanning the date of his arrest and the date of the trial court's decision violated his constitutional right to a speedy trial under both the United States and Ohio Constitutions.
 {¶ 11} In Barker v. Wingo (1972), 407 U.S. 514,92 S.Ct. 2182, the United States Supreme Court set out a balancing test to determine whether a defendant has been deprived of his constitutional right to a speedy trial. A court should weigh the length of delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant caused by the delay in deciding whether the right has been violated.
 {¶ 12} In Barker, the defendant was not brought to trial until more than five years passed after his arrest. The delay was caused in part by the state's efforts to convict an alleged accomplice in order to use the accomplice's testimony at trial. Defendant made no objections.
 {¶ 13} In this case, the length of the delay was only one year. This weighs slightly in favor of the state. Appellant was arrested on October 7, 2003. On October 8, appellant was released on $10,000 bond or bond with a co-signature. The grand jury indicted him shortly thereafter. A bench trial was held in May 2004 and the court rendered its decision on October 6, 2004. Appellant was incarcerated for only one day, but the unresolved criminal charges persisted for less than one year.
 {¶ 14} Appellant did not assert his speedy trial right between the close of evidence and the court's decision. Because the issue was never raised, the trial court had no occasion to provide the reason in the record for the delay. Accordingly, these factors weigh in favor of the state.
 {¶ 15} The last balancing factor, the prejudice to the defendant caused by the delay, also weighs in favor of the state. Appellant maintains that the five-month delay invited error because the lapse of time may have affected the court's recollection of the trial's events. However, the thorough and detailed analysis of the pertinent facts presented at trial contained in the trial court's decision counters appellant's prejudice argument. There is no noticeable sign that the court's recollection was affected by the delay.
 {¶ 16} On the basis that four out of four factors weigh in favor of the state, we find that appellant's constitutional right to a speedy trial under the United States and Ohio Constitutions was not violated. Accordingly, the first assignment of error is overruled.
 {¶ 17} Assignment of Error No. 2:
 {¶ 18} "THE TRIAL COURT VIOLATED THE APPELLANT'S STATUTORY RIGHT TO A SPEEDY TRIAL BY FAILING TO RENDER A DECISION ON GUILT FOR NEARLY FIVE MONTHS AFTER HEARING THE EVIDENCE."
 {¶ 19} In the second assignment or error, appellant argues that his statutorily granted right to a speedy trial was violated. He alleges that 300 days passed from the date of his arrest to the date the trial court rendered its verdict, 30 days beyond the 270-day limit imposed by R.C. 2945.71.
 {¶ 20} When reviewing a speedy trial issue, an appellate court must calculate the number of days chargeable to either party and determine whether the appellant was properly brought to trial within the time limits set forth in R.C. 2945.71. State v.Riley, 162 Ohio App.3d 730, 2005-Ohio-4337, ¶ 19. The review involves a mixed question of law and fact. An appellate court will defer to the trial court's findings of fact but must independently review whether the trial court properly applied the law to those facts. Id.
 {¶ 21} R.C. 2945.71(C)(2) states that a person charged with a felony "[s]hall be brought to trial within two hundred seventy days after the person's arrest." (Emphasis added.) The statute only governs the length of pretrial proceedings. R.C. 2945.71
does not mandate that the 270-day limit is measured from the point of arrest up until the day the trial has been concluded. See State v. Wright (July 29, 1976), Cuyahoga App. No. 35040 (a trial commences when the parties appear before the court and announce that they are ready to proceed with trial and a jury trial is waived by the defendant or the parties start to impanel a jury); State v. Cook (Apr. 4, 1990), Hamilton App. No. C-890066 (a trial commences when voir dire begins); and State v.Knight, Greene App. No. 2003 CA 14, 2004-Ohio-1941, ¶ 8-10
(trial begins at the start of voir dire).
 {¶ 22} After reviewing the record, appellant was arrested on October 7, 2003. He was discharged the following day under $10,000 bond or bond with the co-signature of his mother. A day in which a defendant is held in jail is treated as three days pursuant to the triple count provision of R.C. 2945.71(E). Three days are charged to the state.
 {¶ 23} On October 29, 2003, the grand jury indicted appellant. Appellant's speedy trial time continued to run until November 6, 2003, at which time he moved the trial court to continue his case. Between October 8 and November 6, the state was charged with 30 days, bringing appellant's total to 33 days. Appellant's motion to continue, however, is a tolling event. R.C.2945.72(E). See State v. Bennett, Brown App. No. CA2004-09-028,2005-Ohio-5898, ¶ 15. The matter was continued until appellant's voluntary waiver to be present for his arraignment on November 26, 2003.
 {¶ 24} The record does not contain an entry by appellant requesting a bill of particulars, but the state provided one accompanied by a letter referring to such request. Absent such entry, we shall charge the state an additional 17 days up to December 12, 2003, thus accounting for 50 total days charged to the state. The trial was continued to January and February with no time being charged to the state pursuant to R.C. 2945.72(H) and the court's entries. Trial was eventually set for and held on May 12 and 13, 2004. The state was charged with a total of 50 days, well-within the statutory limit.
 {¶ 25} Furthermore, appellant did not raise the objection to the statutorily mandated speedy trial requirements prior to trial. By appellant's own count, the 270-day limit was allegedly breached only on the basis of the October 6, 2004 decision. However, this argument is without merit considering the plain language of the statute that the appropriate measuring point for the 270-day limit is when the defendant is "brought to trial." Accordingly, the second assignment of error is overruled.
 {¶ 26} Assignment of Error No. 3:
 {¶ 27} "THE APPELLANT DID NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WAIVE HIS RIGHT TO A JURY TRIAL PURSUANT TO THE SIXTH AMENDMENT OF THE UNITED STATES' [sic] CONSTITUTION AND SECTION 5
ARTICLE I OF THE OHIO CONSTITUTION."
 {¶ 28} In the third assignment of error, appellant argues that he did not knowingly, intelligently and voluntarily waive his right to a jury trial. He alleges that he was not fully informed of the consequences of the waiver by his trial counsel or the trial court.
 {¶ 29} A jury waiver must be voluntary, knowing, and intelligent. State v. Ruppert (1978), 54 Ohio St.2d 263, 271. Waiver will not be presumed from a silent record. However, if the record shows a jury waiver, the conviction will not be set aside except on a plain showing that the waiver was not freely and intelligently made. State v. Fitzpatrick, 102 Ohio St.3d 321,2004-Ohio-3167, ¶ 37, citing Adams v. United States ex rel.McCann (1942), 317 U.S. 269, 281, 63 S.Ct. 236. Furthermore, a written waiver is presumptively voluntary, knowing, and intelligent. State v. Bays, 87 Ohio St.3d 15, 19,1999-Ohio-216.
 {¶ 30} In the present case, a written waiver was signed by appellant albeit on the day of the trial itself. Shortly after the state began its opening statement, the following exchange occurred:
 {¶ 31} "THE COURT: Do we have a jury waiver or not?
 {¶ 32} "[PROSECUTOR]:[1] Actually, we need jury waiver probably.
 {¶ 33} "THE COURT: Okay.
 {¶ 34} "PROSECUTOR: I don't recall. Ask Defense counsel. I don't recall if we've got one.
 {¶ 35} "DEFENSE COUNSEL: I'm sorry?
 {¶ 36} "PROSECUTOR: A jury waiver?
 {¶ 37} "DEFENSE COUNSEL: I think I did submit one. I will do that, Your Honor. I believe that I did that at the first pretrial.
 {¶ 38} "THE COURT: Okay. I don't see one in the file.
 {¶ 39} "DEFENSE COUNSEL: We can do that right now then, Your Honor.
 {¶ 40} "THE COURT: Sure.
 {¶ 41} "PROSECUTOR: Can we approach with this?
 {¶ 42} "THE COURT: Yes. Mr. Kelly, you have a right to a trial by a jury. And on a felony charge, such as is contained in this case, you have a right to a trial by jury without making a demand for it. So if nothing else happens, the case proceeds to trial by a jury. And what that means is that there are twelve persons from the community who are determined to be fair and impartial who hear your case. They listen to the evidence. They assess the credibility of the witnesses, and they decide what the facts are. I then instruct them on what the law is that is applicable to the case. They apply that law to the facts, and they decide whether or not you are guilty or not guilty of the offense charged. Do you understand what a trial by jury means?
 {¶ 43} "THE DEFENDANT: Yes, Your Honor I do."
 {¶ 44} After appellant acknowledged that he understood what trial by jury means, the court went on to further explain:
 {¶ 45} "The only way that you can waive the jury trial or have the case tried to the Court is to do [sic] in writing, and the Court has to find that the waiver is knowing, intelligent and voluntary. Now, what a — if the case is not tried to the jury, then it is tried to the Court, which in this case would mean me. And what I would do then is fulfill the role of a jury. So — and the same process would apply. I would listen to the evidence, assess the credibility of the witnesses, and then I would decide what the facts were in the case. I would then apply the law to those facts and I would make a determination whether you are guilty or not guilty of the offense. So if you do not have a jury trial, and you have a trial to a judge, the judge essentially performs the role that would be performed by twelve jurors. Do you understand that?"
 {¶ 46} Defense counsel acknowledged that appellant understood and appellant confirmed so afterward. Appellant's counsel then mentioned that appellant wanted a jury trial and the following exchange occurred:
 {¶ 47} "THE COURT: Okay. We will start the jury trial tomorrow morning.
 {¶ 48} "DEFENSE COUNSEL: Okay. Hold on one moment, please? We'll go forward today, Your Honor.
 {¶ 49} "THE DEFENDANT: Do it. We can do it here.
 {¶ 50} "THE COURT: Well, I'm not suggesting that it be tried to the court. So I don't — you don't get any — there's no more favorable treatment.
 {¶ 51} "DEFENSE COUNSEL: I have explained that to him He just wasn't —
 {¶ 52} "THE COURT: If he wants a jury trial, I would suggest he have a jury trial. I certainly would not ever suggest that somebody waive their right to a trial by jury. I think a trial by jury — and I tell this to juries after every trial — is one of the most valuable parts of our system. So it is up to you, Mr. Kelly, whether you want a trial to a jury or a trial to the Court. If you have a trial to the jury — and to a jury and you are found guilty, you will be in no way punished by the Court for exercising your right. So I don't do that. You will be treated just the same as if you've been found guilty after a trial to the Court. So it — it's up to you. Do you want a trial to the Court or a trial to the jury?
 {¶ 53} "THE DEFENDANT: Today with you, sir."
 {¶ 54} Appellant confirmed his desire to waive the jury trial and proceed with the bench trial no less than three additional times after this exchange. Appellant also told the court that he understood the right he was waiving and had no questions about it.
 {¶ 55} Appellant now specifically argues that he was not informed by the court that he had a right to participate in the selection of jurors or that the verdict of the jury must be unanimous. However, a trial court need not fully advise a defendant of all the implications of a jury waiver. "There is no requirement for a trial court to interrogate a defendant in order to determine whether he or she is fully apprised of the right to a jury trial." State v. Jells (1990), 53 Ohio St.3d 22, paragraph one of the syllabus. "The Criminal Rules and the Revised Code are satisfied by a written waiver, signed by the defendant, filed with the court, and made in open court, after arraignment and opportunity to consult with counsel. While it may be better practice for the trial judge to enumerate all the possible implications of a waiver of a jury, there is no error in failing to do so." State v. Foust, 105 Ohio St.3d 137,2004-Ohio-7006, ¶ 53, citing Jells at 26.
 {¶ 56} In the present case, the trial court extensively discussed the option of a jury trial with appellant. Appellant consulted counsel. The trial court provided further opportunity to ask questions. Appellant repeatedly confirmed his understanding and entered a written waiver before open court. The fact that the waiver was entered on the day of the trial does not preclude the fact that appellant did so knowingly, intelligently and voluntarily. Accordingly, the third assignment of error is overruled.
 {¶ 57} Assignment of Error No. 4:
 {¶ 58} "TRIAL COUNSEL RENDERED THE APPELLANT INEFFECTIVE ASSISTANCE IN FAILING TO CALL DISINTERESTED EXCULPATORY WITNESSES; IN FAILING TO FILE A MOTION TO SUPPRESS THE TESTIMONY OF OFFICER BULLOCK AND DETECTIVE SERGEANT CAVIGLIA [sic], AND/OR BY FAILING TO OBJECT AND MOVE TO STRIKE THEIR TESTIMONY WHEN IT BECAME CLEAR THAT THE APPELLANT MAY NOT HAVE BEEN ADVISED OF HIS RIGHTS UNDER MIRANDA; AND IN FAILING TO FULLY COUNSEL THE APPELLANT AS TO HIS RIGHT TO TRIAL BY JURY IN ADVANCE OF TRIAL; IN COERCING THE APPELLANT TO WAIVE HIS JURY TRIAL RIGHTS; AND IN FAILING TO RAISE THE STATUTORY AND CONSTITUTIONAL ISSUES OF SPEEDY TRIAL."
 {¶ 59} In the fourth assignment of error, appellant argues that he received ineffective assistance of counsel with respect to the following issues: (1) failure to call witnesses that would further support appellant's story and credibility that he had permission to use the end loader; (2) failure to suppress or object to statements that may have been given to police without aMiranda warning pursuant to Miranda v. Arizona (1966),384 U.S. 436, 86 S.Ct. 1062; (3) failure to properly advise appellant of his rights to a jury trial; and (4) failure to raise constitutional and statutory right to speedy trial issues.
 {¶ 60} To establish a claim of ineffective assistance of counsel, appellant must show that his trial attorney's performance was both deficient and prejudicial. Strickland v.Washington (1984), 466 U.S. 668, 685, 104 S.Ct. 2052. Appellant must show that his counsel's representation "fell below an objective standard of reasonableness." Id. at 688. Appellant must further show that he was prejudiced by this deficient performance. Id. at 687. Appellant demonstrates prejudice when, but for counsel's errors, a reasonable probability exists that the result of the trial would have been different. State v.Bradley (1989), 42 Ohio St.3d 136, 143. A strong presumption exists that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance. Id. at 142, citing Strickland at 689.
 {¶ 61} Appellant contends that trial counsel should have called witnesses to verify his account that he had received permission from Ron Webster to borrow the skid steer. Generally, decisions to call witnesses are within the purview of defense counsel's trial strategy and are not considered deficient performance absent a showing of prejudice. State v. Hunt
(1984), 20 Ohio App.3d 310, 312. Appellant must establish that the testimony of the witnesses would have significantly assisted the defense and affected the outcome of the case. State v.Reese (1982), 8 Ohio App.3d 202, 203. Otherwise, the failure to call witnesses does not establish ineffective assistance of counsel. Id.
 {¶ 62} In the present case, witness testimony that appellant had permission to borrow the skid steer could have benefited appellant's case. However, the perceived testimony of such witnesses, who remain unverified outside of appellant's own testimony, remains purely speculative. At trial, appellant only identified "electricians and pipe fitters" who saw him load his truck. We find that appellant did not demonstrate that he was prejudiced by trial counsel's failure to call these witnesses.
 {¶ 63} Appellant next argues that he received ineffective assistance of counsel concerning statements he made to the police without properly receiving Miranda warnings. He contends that the trial court relied solely on the testimony of Officer Bullock and appellant's statement to fulfill the knowledge requirement of the receiving stolen property offense. Appellant also contends his trial counsel should have sought the exclusion of statements made to Officer Gaviglia, again citing the lack of Miranda
warnings.
 {¶ 64} With respect to the testimony of Officer Bullock and appellant's written statement, appellant bases his assertion on Officer Bullock's testimony under cross-examination that the officer "believed" he read appellant his Miranda warning prior to receiving appellant's written statement. However, after reviewing the record, we find that the officer testified under direct examination that he advised appellant of his Miranda
rights and that appellant expressed that he understood his rights. The fact that Officer Bullock responded that he believed he read appellant his Miranda warning does not necessitate a finding that the statements are inadmissible. Thus, trial counsel's representation did not fall below an objective standard of reasonableness by not objecting to the admission of the evidence.
 {¶ 65} Trial counsel also properly did not object to the admission of evidence concerning statements made to Det. Gaviglia. At trial, Det. Gaviglia and Officer Bullock testified that appellant voluntarily went to the police station to discuss the situation with police. Det. Gaviglia did not read appellant his Miranda warnings because there was no custodial interrogation. See Miranda, 384 U.S. at 444.
 {¶ 66} Appellant's argument that his trial counsel did not fully inform him of his right to a jury trial is without merit. As stated earlier, appellant waived his right to a jury trial knowingly, intelligently and voluntarily. Trial counsel's representation was reasonable and appropriate.
 {¶ 67} Appellant's argument that he received ineffective assistance of counsel when trial counsel did not raise the constitutional or statutory right to a speedy trial is also without merit. As resolved in the first and second assignments of error, appellant's right to a speedy trial was not violated. Thus there was no deficient representation by trial counsel when it did not raise an objection to the length of appellant's trial. Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 68} Assignment of Error No. 5:
 {¶ 69} "THE TRIAL COURT'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 70} In the fifth assignment of error, appellant argues that the trial court's finding of guilt was against the manifest weight of the evidence. He argues that the decision rested primarily on the court's determination of credibility and where it lay.
 {¶ 71} To determine if a conviction is against the manifest weight of the evidence, an appellate court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. When reviewing the evidence, an appellate court must be mindful that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 72} After a thorough review of the record, we cannot say that the trial court clearly lost its way. At trial, appellant developed a defense theory based on the idea that Webster loaned him the skid steer. Appellant also argued that his estranged wife had strong motives to lie.
 {¶ 73} In its decision, the trial court stated the following: appellant was informed a skid steer had been stolen from a worksite, appellant participated in an effort to locate the missing skid steer; Webster reported a stolen skid steer to the Athens County Sheriff's Office; appellant's wife reported what was a possible stolen skid steer in her backyard to the Union Township Police Department; the skid steer was towed to the police station; appellant voluntarily went to the police station and told Det. Gaviglia that he had been given permission to use the skid steer but had problems returning it; and appellant told Officer Bullock that there was a standing offer to borrow the skid steer and he had difficulty returning it.
 {¶ 74} The trial court findings also described stickers identifying the skid steer as property of RWS that were removed from several locations on the skid steer and replaced with rental stickers. The trial court explained that the logical inference from this circumstance was that the stickers were removed to conceal the fact that the skid steer belonged to RWS. The only person with access to the skid steer was appellant. We find that the trial court did not lose its way when it determined appellant's theory that he had been loaned the skid steer was not credible.
 {¶ 75} Appellant argues that the trial court could not effectively weigh the credibility of witnesses given the time between the close of evidence and the rendering of the court's decision. As discussed previously, the trial court's recollection of facts does not appear to be deficient. On the contrary, the court's decision is very detailed. The trial court was in a better position to weigh the credibility of witnesses than this court. The fifth assignment of error is overruled.
 {¶ 76} Assignment of Error No. 6:
 {¶ 77} "THE CUMULATIVE ERROR RULE REQUIRES REVERSAL OF THE TRIAL COURT'S VERDICT."
 {¶ 78} In the sixth and final assignment of error, appellant argues that even though a particular error might not constitute prejudicial error in and of itself, the cumulative effect of harmless, non-prejudicial errors results in unfair prejudice and deprives appellant of a fair trial. See State v. DeMarco
(1987), 31 Ohio St.3d 191, 197.
 {¶ 79} In order for the doctrine of cumulative error to be applicable however, an appellate court must find that multiple errors, none of which individually rose to the level of prejudicial error, actually occurred in the trial court. We have found that no errors existed, prejudicial or otherwise. Thus appellant's argument is without merit. The sixth assignment of error is overruled.
 {¶ 80} Judgment affirmed.
Walsh and Bressler, JJ., concur.
[1] For purposes of clarity and ease of reading, trial counsel names have been substituted with "Prosecutor" and "Defense counsel."